# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ALISA BADLEY et al.,

      Plaintiffs,

v.                                    CIV No. 01-1281 MV/LFG

CORN CONSTRUCTION,

      Defendant.

## FINDINGS OF FACT AND
## RECOMMENDED DISPOSITION[1]

THIS MATTER is before the Court on an application for approval of a settlement. Court approval is necessary because of the presence of the minor Badley children, Dayson and Erin.[2] Having heard the presentations of counsel and the testimony of witnesses, and having considered the report and recommendation of the Court's guardian ad litem presented at a hearing on May 1, 2002, the Court finds:

---

[1]Parties were advised of their right to file objections to this report and recommendation within ten days, pursuant to 28 U.S.C. § 636(b)(1). However, in order to expedite the approval of this settlement, counsel agreed at a May 1, 2002 hearing that they had no objections to the Court's proposed findings and recommended disposition.

[2]The general rule is that the court must give approval to a settlement when minor children are involved. The court "has a special obligation to see that [children] are properly represented, not only by their own representatives, but also by the court itself." Garcia v. Middle Rio Grande Conservancy Dist., 99 N.M. 802, 808, 664 P.2d 1000, 1006 (Ct. App. 1983), *overruled on other grounds by* Montoya v. AKAL Sec., Inc., 114 N.M. 354, 357, 838 P.2d 971, 974 (1992).

**Findings**

1.      Alisa Badley, individually and as next friend of her children Dayson and Erin Badley brought a Complaint to Recover Damages for Personal Injury related to an automobile accident. Dayson was 11 at the time of the accident and Erin was 6 years old.  [Complaint.]

2.      The incident giving rise to this lawsuit occurred on June 21, 1998 on Interstate 25 ("I-25") in Santa Fe County.  The accident took place in a road construction zone where Defendant Corn Construction ("Defendant") had been conducting road construction operations pursuant to a contract with the New Mexico State Highway and Transportation Department.  [Initial Pre-Trial Report, Doc.13.]  Plaintiffs were traveling north on I-25, when they were involved in a head-on collision with a vehicle driven by Josephine Varela, who was traveling south bound on I-25.  [Id.]

3.      Plaintiffs alleged that Defendant failed to properly sign, signal and mark the construction zone, which caused the accident.  [Doc. 13, p. 3.]  Defendant denied that it was negligent and that its conduct was responsible for causing the automobile accident.  [Doc. 13, p. 4.] Defendant asserted that an unknown third-party had removed construction barrels during the night before the accident.  [May 1, 2002 hearing.]

4.      All three Plaintiffs suffered injuries and incurred medical expenses as a result of the automobile accident.  [Doc. 13.]  Dayson was sitting in the front right-side passenger seat and had released his seatbelt immediately prior to the accident to reach into the back seat.  Because he was not protected by a seat belt, he suffered the most serious injury of all the passengers – a fractured left femur.  He was hospitalized one week and had a metal rod inserted and later removed from his leg. Erin had her seat belt on in the back seat of the vehicle and suffered minor physical injuries, consisting

primarily of contusions, bumps, bruises and scratches. Both children and their mother suffered emotional damages as a result of the accident.

5. The parties participated in a private mediation and agreed to a structured settlement of Plaintiffs' claims in the total amount of $225,000 for Alisa, Dayson and Erin Badley, subject to the Court's approval.[3]

6. The parties previously reached a settlement with the driver of the other vehicle.

7. Scott Hatcher was appointed guardian ad litem as an "arm of the court" for Dayson and Erin Badley.

8. Mr. Hatcher conducted extensive and in-depth work on this case, including a review of the pleadings, documents and medical reports. He also interviewed the family.

9. On May 1, 2002, the Court held a hearing on the parties' application for approval of the settlement. Counsel for Plaintiffs and Defendant attended the hearing, along with Mr. Hatcher. Alisa Badley participated telephonically, and her children were present with her in the office of Ms. Davis, the structured settlement expert.

10. The sum of $225,000 is to be divided as follows: $100,000 for Alisa Badley; $115,000 for Dayson; and $10,000 for Erin. The parties have agreed to an additional amount of about $2800.00 that was not previously included in the settlement agreement.

11. During the hearing, Mr. Hatcher explained further details of the structured settlement agreement and also the terms of the previous settlement with the other driver. In this settlement, Erin will net approximately $7500.00, most of which will be placed in the structured settlement account.

---

[3]Court approval of the settlement amounts for Alisa Badley is not required as Ms. Badley is an adult and suffers no legal disability.

Dayson will net about $70,700.00, and $49,000.00 of that will be placed in the structured settlement account. Alisa will net about $63,000.00.

12. In accord with the terms of the annuity, Dayson's guaranteed payout from the structured settlement is about $108,000.00; Erin's guaranteed payout from the settlement is a little over $10,000.00.

13. The approximately $20,000.00 of Dayson's settlement that was held out from the structured settlement account is to be used as follows: $10,000.00 for Dayson's future medical care (placed in a 3-year CD); and the other $10,000.00 for Dayson's various needs, including a computer, software, related books and a new bed. Alisa may also use portions of that $10,000.00 as reimbursement for medical costs she advanced. Part of the $10,000.00 is also going to be used for a family trip to Alaska.

14. In addition to Dayson's problems with his leg that resulted from the accident (and emotional trauma), Dayson suffers from renal contusion and continues to be monitored for blood in his urine. The renal condition arose after the automobile accident, but Dayson's physician is unable to state to reasonable degree of medical certainty that the condition was caused by the accident. Indeed, such a condition may be congenital. Dayson's injuries to his leg have healed. He has no limitations as to his daily activities related to the leg injury, and his prognosis for that injury is excellent. However, some of his sporting activities are limited due to the renal condition. He also was diagnosed with PTSD after the accident, but has recovered and is doing well in school.

15. Erin suffered no lasting physical injuries from the automobile accident. She also was diagnosed with PTSD but seems to have improved and is doing excellent in school.

16.     Mr. Hatcher stated at the hearing that while he struggled, to some degree, with recommending the proposed use of Dayson's approximately $10,000.00 for the family trip and other needs, he concluded that these uses were in the childrens' best interests, particularly because of the emotional trauma of the accident. He believed that the family trip might be therapeutic and may further alleviate that stress.

17.     Mr. Hatcher stated that he believes the total settlement is in the range of a fair settlement, given the risks of litigation, and that he thinks the family's proposed use of the money is "appropriate." Therefore, after consideration of all of the relevant factors, Mr. Hatcher recommended that the Court approve the settlement as being in the best interests of Dayson and Erin Badley.

18.     His recommendation for approval of the settlement is based, in part, on questionable liability on the part of Defendant Corn Construction and on the likelihood that on a comparative fault basis, a significant portion of fault could be assigned to others, including those who removed the warning barrels.

19.     Defendant has agreed to pay attorney fees to Mr. Hatcher for his services as a guardian ad litem.

20.     The structured settlement account is with Travellers Insurance. The company carries an A++ Best rating. The current assets of the company are in excess of 48 billion dollars.

21.     At the May 1, 2002 hearing, Ms. Badley testified by telephone that she understood she had no obligation to settle and had a right to proceed to trial, and that she further understood if this case proceeded to trial, a jury could find in excess of the settlement amount to which they have agreed.

22.     Ms. Badley testified that she was not under the influence of any medications or substances that had impaired her ability to understand and that she had had ample opportunity to confer with her attorney regarding the settlement.  She stated that she believed the settlement was fair.  Thus, the settlement is not a product of force, coercion or undue influence.

23.     Ms. Badley testified that she understood her son's problems from his renal condition and/or left femur could worsen and that if she agreed to this settlement, the terms of the settlement were final as to the claims raised in this lawsuit, and there would be no opportunity to reopen this litigation to seek more money, or to file new claims against this Defendant.

24.     Ms. Badley also testified that she understood the settlement monies designated for her children were for their use.  The Court inquired of Plaintiffs' counsel whether counsel had informed Alisa Badley that the settlement funds for her children were for their use in accordance with Leyba v. Whitley, 118 N.M. 435, 882 P.2d 26 (Ct. App. 1994), *reversed in part on other grounds by*, 120 N.M. 768, 907 P.2d 172 (1995).  Plaintiffs' counsel stated that she had discussed this extensively with Alisa and that Ms. Badley understood the funds belonged to her children and could be used only for their needs.

**Conclusions of Law**

After consideration of the evidence, the presentations of counsel, and the guardian ad litem's report and recommendation, the undersigned Magistrate Judge concludes that the Court has jurisdiction over the parties and subject matter, and further concludes that this settlement is in the

childrens' best interests.  Therefore, the Court recommends that the settlement be approved and that

this case be dismissed with prejudice.

_Lorenzo F. Garcia_

Lorenzo F. Garcia
United States Magistrate Judge